We're happy to hear argument in our first case number 144239 United States v. Champion. Mr. Watkins. Good morning. May it please the court. I'm Daniel Watkins and I represent the appellant Anthony T. Champion. This appeal presents one legal question to this court. Does the odor of marijuana smoke from the passenger compartment of a car justify a warrantless search of the car's locked trunk? Under California v. Acevedo and this court's ruling in Carter v. United States, the answer to that legal question is no. Probable cause must be tailored to specific compartments within an automobile. I ask that the court reverse the district court's order denying Mr. Champion's motion to suppress. I'd like to remind the court that legal conclusions are reviewed de novo and because the search at issue was without a warrant, the burden is on the government to show that an exception to the warrant requirement applies. First, I'll briefly describe the facts of this case and then I'll analyze those facts under the controlling law. Mr. Watkins, if we answer the question that you say is presented, why wouldn't our answer just be dicta? I believe under Acevedo, the Supreme Court has made it clear that in order to, excuse me, when police believe that probable cause exists for contraband to be in one portion of a car to the exclusion of another portion of a car, then the probable cause is limited to that portion or compartment. And so the holding in Acevedo, I believe, is instructive in Carter and the other Fourth Circuit cases where this court has declined to extend the rule after police detect the odor of marijuana from the passenger compartment. But we have more in this case than the mere odor of burning marijuana, don't we? That's correct, Your Honor. The district court held that the odor of marijuana in conjunction with one of the occupants of the vehicle's admission to smoking marijuana earlier in the day justified the search of the passenger compartment and indeed the trunk. However, Judge Spencer made clear that after marijuana was detected in the, excuse me, after officers smelled marijuana in the passenger compartment of the car, that they were justified in searching the trunk. But as you say, we determined the legal effect of the objective facts de novo, correct? Yes, Your Honor. We determined what ingredients on the facts of this case add up to probable cause. That's correct, Your Honor. And so I understand what the district judge said, but we're not bound in our de novo review of the meaning of the undisputed facts by what the district court said, are we? I don't believe you are. I believe that the findings of fact that the district court made, I believe this court can use those to determine whether probable cause existed. So your position has to be that taking all those facts as found, there's still not probable cause? Yes, Your Honor. And upon reading of the Fourth Circuit cases on point, it appears that in other traffic stops, when police do smell burning marijuana, for instance, in the United States versus Carter, there's always more. In Carter, a canine drug detection dog detected at the side of the car, marijuana was actually found in the first search of the passenger compartment. And given the reading of Carter, Lynn, and several other cases, two searches take place. First, it's the passenger compartment search, and then after that, depending on what is found in that search, a trunk search may be justified. The fact that there was more in those cases doesn't necessarily mean that less might not be enough in a particular case, right? Can you say that again? I'm sorry. The fact that there was more in the cases that you just recounted doesn't necessarily mean that less might not be enough. Probable cause is not intended to be an insurmountable or very high burden, right? That is correct, Your Honor. What about the facts in addition to the admission by one of the passengers in this case that they were, in fact, smoking marijuana? What about the circumstances of the driver's odd behavior and the like? Why can't we account for those facts in determining whether or not the officers had probable cause to search the entire vehicle in this case? Well, I think the first fact, given the video of the traffic stop was a part of the record, and the first fact that is apparent is Mr. Champion exits his car. He gets out of his car, and Trooper Treacle approaches him. The reason that he did that is because Mr. Champion didn't have a license. Yeah, but remember we have the swinging across the... The facts about the driving didn't start there. Your client was swinging across the... I mean, it's odd, but the officer apparently wanted him to stop on the left shoulder. He didn't. He went over to the right shoulder. The cop goes by him, comes back. I mean, it's... The cop sees somebody that he thinks has been reckless, and that's what the film looks like, too. Yes, Your Honor. So I guess Judge Diaz's question is, take all the facts, you know, that were before the district court. Well, even taking all the facts before the district court, I believe that a search of the passenger compartment would only be justified given that under Ms. Wyatt's statements that she... You mean a search of the trunk? You said passenger compartment. Did you... You said only that. I believe I said only the passenger compartment to the exclusion of the trunk. And so the officer smells the odor of marijuana from the passenger compartment, and this is distinct from plain view doctrine because the very nature of odor itself suggests that the source of the odor was present recently, but does not necessarily indicate that it's currently there. So given the totality of circumstances that the police had at the time of the traffic stop, it would have been perfectly reasonable for them to conduct an exhaustive search of the car. And the reason that they failed to do that had nothing to do with the Fourth Amendment or the reasonableness of the search. It had to do with it being cold outside that day and there being dog excrement in the passenger compartment of the car. And the Fourth Amendment's protections extend beyond, as I stated in my brief, inclement weather or the inconveniences of the initial... of the compartment where the initial search took place. Would your case be different if they had... if the police had found some marijuana cigarettes inside the car? Yes, Your Honor. At that time... Like if they found two cigarettes, that would change the case? Yes, Your Honor. That would give them probable cause to go into the trunk. What about if they found only seeds? That's enough too? Yes, Your Honor. We believe... I mean, why is this case any different? There's an admission of marijuana use in the car. The admission of marijuana use in the car is distinct from them finding either the remnants of marijuana or... Are you saying the officers need to discount that? Need to discount what? I'm sorry. That admission? Well, from a factual standpoint, it's not clear that the officers knew that prior to the search of the trunk. Trooper Trekel stated that Trooper Tycho told him, but he couldn't remember whether it was before the trunk had been popped open. And I'd point the court to Joint Appendix at 38, 46, 55, 64, and 65. So it's our position that Ms. Wyatt's admission of smoking marijuana is merely cumulative to the officer's detection of marijuana smoke. It does not corroborate that present marijuana is located, excuse me, that marijuana is presently located in the vehicle. Okay. Well, I'd like to sort of remember back to the question about would two marijuana cigarettes change things? Yes. Would seeds change things? Yes. Yes, Your Honor. So if we had evidence, if she had in fact told an officer clearly from the record before the officer opened the trunk that she had been smoking marijuana, would that change things? No. No, Your Honor. It would make my case a bit harder, but it would not be dispositive on the issue. I think we're having, or at least I am having a hard time understanding why it's different to see a couple of seeds of marijuana than to have someone admit, yes, I was smoking marijuana. It seems to me they go to the same place. I believe it comes down to the difference between sight and smell. This is not a canine. Right. That part I understand, but what is, in terms of probable cause, what's the difference? I think it comes down to the justification of the search, Your Honor. But why would the seeds be more justification than the acknowledgement that, yes, I was smoking marijuana cigarettes? Because it's not unlawful to, while it is unlawful, Your Honor, the fact that it happened prior to the search changes things immensely. Just like if the police officer had walked up and they were smoking. Remember, I said to you, would it matter to you if we knew from this record that the acknowledgement that I smoked the cigarettes took place before the search? And you said, no, that wouldn't matter. I'm sorry. Can you repeat the question? If we knew, I understand your submission is that we do not know from the record whether there was the acknowledgement that, yes, I smoked a marijuana cigarette before the search of the trunk. If it was before the search of the trunk, would that matter? It would make my case harder to argue. But then you keep going back to me and saying, but then I, you say that that's the difference between the seeds and the acknowledgement that the seeds are, but if somebody actually tells you they did it, it seems to me that's the same seed. Somebody else could have brought seeds in. They could have ran out of the car. Let me, I'll restate my point. I'm sorry if I'm not being clear. I believe finding marijuana in the passenger compartment would justify a subsequent search of the trunk. Any, any seeds, glassine bags, marijuana joint, drug paraphernalia, that would justify a second search of the trunk to find additional marijuana use or, or evidence of marijuana. But to simply search the trunk given the assertion that Ms. Wyatt smoked marijuana in the passenger compartment earlier in the day is, is not reasonable. And I guess I don't see the line. See, I, I had thought that your position was going to be, okay, when you look at searches, you look at where something might reasonably be small amounts of marijuana in the trunk. What you would be looking for in the trunk is a large stash and there is no evidence of large stash. I don't know if that argument was succeeded, but I thought that was your argument. No, Your Honor. That's not your argument. No, Your Honor. We, although the scope of the search determines where officers can look, the evidence that provides probable cause for the search is also a determining factor. Since the police officer smelled marijuana odor, excuse me, the odor of marijuana smoke from the passenger compartment and not any other part of the car, then they had to look in the passenger compartment first, exhaustively, before moving on to the trunk. It's clear that drugs could be... Wait a step. Excuse me? Okay. Oh, now I think I understand. If they had done that, if the record reflected that they looked carefully all through the passenger compartment before they went to the trunk... Yes, Your Honor. ...then the search of the trunk would have been okay? Maybe. I think that it... So if they find marijuana seeds, if they find a marijuana... No, no, no. They don't find anything else. It depends. If they believe that the... I'll tell you why. If they believe that the source of the odor is no longer present, then a search would not be justified. But if upon completing an exhaustive search of the passenger compartment, they're still smelling marijuana, they smell marijuana emanating from other portions of the car, then it would be acceptable to search the other portions of the car. But the fleeting smell of marijuana smoke, what the officers believe to be a ticketable amount, would not justify a search of the trunk automatically because nothing was found in the passenger compartment. You know, go back to Judge Davis' original question. We don't have automatically. We have the acknowledgment by one of the passengers that, yes, I was smoking marijuana. It's not some policeman just saying, marijuana was in the air. We have a passenger saying, yeah, I was smoking. Right. And her saying that she smoked earlier is justifying what the officer is smelling. It doesn't mean that marijuana is presently in the car. And as the record indicates, no marijuana was ever found. It may not mean conclusively, but the question is whether or not there's probable cause to continue the search based on that admission and the smell of marijuana. And remember, our distinction is with the search of the trunk. Had the officer only searched the passenger compartment, we would not be here to... Assume for purposes of probable cause that there might be even a personal use amount of marijuana in the trunk given the passenger's admission that she had used marijuana. Because all the evidence that the officers had suggested that marijuana, there's a probability that marijuana would be in the passenger compartment to the exclusion of every other portion of the car. On at least six different occasions throughout the record, officers stated, we smelled it from the passenger compartment. They talked about how they understood the distinct configuration of cars, and they very easily could have said, it was somewhere from the car. We don't know where, it was somewhere from the car. And if the officer had said that under Ross, they would have been permitted to turn the trunk inside out, open the hood, go through the engine, et cetera, et cetera. But the intelligence that the police had on that day indicated that there was a fair probability that marijuana would be found in the passenger compartment of the car. Ms. Wyatt's statements, even if they were made prior to the search, does not extend the scope of that search. In the district court's ruling, excuse me, as I said before, the K-9 was present but was not used. About halfway through the passenger compartment search, Trooper Tycho opened the door. Assuming Ms. Wyatt had a purse, or maybe one of the guys had a purse, you agree, do you not, that the officer could have searched the purse? Yes, Your Honor. He could have searched the purse, and he even could have searched their person. So it seems to me that it's far more intrusive, far more an assault on Fourth Amendment protections to say an officer on these facts can rummage through someone's purse, but not open the trunk of a car. Is that where the state of the law is today? What the police should have done is used the K-9 to alert. But it's not our job to say what the police should do. We're passive assessors of what should happen, not predictors or instructors of what should happen in the future. It's kind of strange that the Fourth Amendment has come to this point where you're here in front of us arguing that a far greater, more invasive search on these facts would be justified, whereas trunk of a car, most people would say who cares what's in the trunk of a car unless you put contraband in there. I see that I'm almost running out of time, so I'll answer your question. Reasonableness is the touchstone here. If you believe that someone was smoking marijuana in the passenger compartment of a car, it's reasonable to search every container in the passenger compartment of the car. It's not reasonable to rummage through Ms. Wyatt's purse, pop open the trunk, and then start going through every piece of luggage in the trunk. So although it may be more intrusive to go through the luggage in the trunk, it's much less reasonable. I'm pretty much out of time here, so unless there are further questions, we ask that you reverse the lower court's ruling and deem the warrantless search unconstitutional. May it please the Court, I'm Stephen Miller. I'm here on behalf of the United States. As the Court has identified, there is far more to this case than simply the officer smells marijuana and they search the trunk, and so I want to spend a little bit of time on the facts, although I think the Court has pointed out some of the salient ones. But the first thing is, both Trooper Tycho and Trooper Treacle testified that they smelled a strong odor of marijuana, and that's what the Court found, a strong odor of marijuana. That in itself indicates that there was recent use in the vehicle. As the Court pointed out, and the Judge found, and the Defendant acknowledges, that sensory observation by the officers was corroborated by Ms. Wyatt. And by the way, in the record, it's clear that that happened before the trunk was searched. Trooper Tycho is the one that had the conversation with Ms. Wyatt, and he testifies at the joint appendix on page 54 that it happened before. Trooper Treacle said he couldn't really specifically remember when he was told, but his best recollection was that it happened before, and that's at page 46 of the record. As Judge Diaz pointed out, there are also these strange circumstances that went on before all of this happened. And I'm not even talking now about the erratic driving, which was certainly a problem. But if you look at what happened when the Defendant is finally stopped, he gets out of the car and he walks some 30 or 40 feet away from the car, which Trooper Treacle testified gave him concern. And the Judge found was because it indicated that he wanted to distance himself from that vehicle. Which means that there was something in that vehicle he did not want the officers to find. Could well have been the fact that he recognized himself that there was a present odor of marijuana in the car. So what we have is a situation where the officers have probable cause to believe there has been recent use of marijuana in the Camry that they stopped by at least one of the individuals who was in the car at that particular moment in time. And I want to throw out as well, it's significant that this stop occurred about halfway on a trip from Georgia to Boston. And the reason that's significant is marijuana's not like toothpaste. You can't get up to Boston and say, I'm going to go to the CVS and get myself some toothpaste. It's difficult to get marijuana because it's illegal, it's hard to find where it is, it's dangerous to find. And so if, and we know that they were smoking on the trip, if you're going to be smoking on the trip, it's reasonable to believe you can bring additional marijuana with you for your trip because you can't get it at your destination. Well, the lady said they were going to Washington. Well, either way, whether it's- Maybe they- Whether it's- Places to get marijuana in Washington. Well, there are certainly places you can get them, but it's not like somebody who's not from that area can walk into the area and figure out where to get your marijuana. So it's reasonable to believe there'll be additional marijuana there. So given the fact that the officers had probable cause to believe that there was recent use of marijuana by those people, or at least one of those people in the car. The question then becomes, what is it that they are allowed to look for? The defendant says that the only thing that they can look for is the source of the smell of the marijuana. But the reality is, even the defendant doesn't believe that. In his brief, he says, after the presence of marijuana was corroborated by Ms. Wyatt, he says, quote, This provided police with probable cause to believe that traces of smoked marijuana might still be present in the passenger compartment, or that additional marijuana might be in the interior of the car. Now, he limits it to the interior of the car. But even he acknowledges that the presence of the odor of marijuana suggests there might be more marijuana in that car. In the Turner case, which we cited in our brief in the DC circuit, the court explains why that is. They said that there is a, once you have evidence of personal use of marijuana, which is what we have here, there is a fair probability that it might be additional marijuana, not necessary for current consumption, that's kept out of plain sight. And the court, the attorney court specifically says, that could be in the trunk of the car. Because marijuana can be stored anywhere. In fact, both Trooper Tyco and Trooper Treacle testified, and they are very experienced narcotics officers, that's what they do, they're interdiction officers. They said, in their experience, it was not uncommon for them to find personal use amounts, to smell personal use amounts in the passenger compartment, and then to find more marijuana, either personal use or distribution quantities, in the trunk of the car. I take it you would acknowledge that the smell of the marijuana didn't give the police officers a probable cause to search for something other than marijuana or arguably other illegal drugs. That's correct, and both Trooper Treacle and Trooper Tyco testified specifically that they were searching the passenger compartment for marijuana and the trunk of the car for marijuana. So if the troopers had gotten word that somebody had stolen a large trunk of jewels, they could only be stored in the trunk of a vehicle. They wouldn't have probable cause just because they smelled the marijuana to go look in the trunk for that. If I understand your hypothetical correctly, they hear generically there is someone who's stolen, but they don't have any reason to say that it's this group of people. Right. I would agree. There was no, I will concede there is no probable cause for them to be searching for anything other than marijuana. But that's what they were doing, and in the facts of this particular case where there was corroborated, credible evidence of recent use, that additional marijuana could be anywhere in the car. And that's what Ross tells us. But your position is that even without that corroboration, the mere odor of marijuana in the passenger compartment would be enough to allow the officers to search the trunk. Well, what I would suggest to the court is if there is a credible basis to believe that there has been current use. It could be a situation where there's a faint odor of marijuana, and that's what distinguishes the cases at the defendant's sites. Might not give you reason to believe that there is still marijuana in the car. But in this case, there was credible evidence to believe that there was fairly recent use in that particular vehicle by these people. Which gives you now probable cause to believe they have additional marijuana, which could be anywhere in the car. Some of the cases made the distinction I had to have explained to me by my law clerks. Between recent or burnt marijuana and non-burnt marijuana. And apparently, non-burnt, that is not yet used marijuana, has a very significant smell, maybe more than burnt marijuana. And so, at least one of the circuits says, in your situation, if you had the smell of non-burnt marijuana, you could go into the trunk, but with burnt marijuana, no. I'm not sure what cases- Smell. I'm not sure what cases you're talking about. The cases that we cite in our briefs, such as in this- You're not going to argue with me that some courts have made that distinction, are you? I'll give you the site, but I promise you there is. But what I'm asking you is, would you also support a distinction like that? In other words, that the live marijuana, finding the smell of that would give you more probable cause to go further than the smell of burnt marijuana. I would disagree, and in fact this court in the Haley decision, in that particular case, there was a smell of burning marijuana. The officers then found a small bag of marijuana. And interestingly enough, the defendant says that there should have been a complete search of the passenger compartment first before they go to the trunk. In the Haley case, they smell burnt marijuana. They find a small quantity of marijuana, and they immediately go to the trunk. And this court said that that's justified, because there is reason to believe there's additional marijuana. In addition, in the Turner case, in all of these cases, talk about the distinction or address the personal use argument, which is if we're simply talking about personal use of marijuana, is somewhat the argument the defendant makes. That you can only look where you could be actively using marijuana, which is the passenger compartment. And every single circuit court that has considered that argument has rejected it. I'm sorry, I didn't hear the argument. The argument is, if the evidence is personal use, such as the smell of marijuana, then the officers have probable cause to search only that area where personal use can occur, which is the passenger compartment. And every single court that has addressed that has rejected that. As Turner explains, there's probable cause to believe that you're going to be bringing with you additional marijuana, that you're not going to have with you to smoke at that moment. And so you're going to put it in other places of the car that are out of sight. So why would, you made a distinction between the faint odor of marijuana and a recent smell. Then under your analysis there, that doesn't seem to make a difference. If you smell it, there's a possibility, a probability that it's going to be somewhere in the car. It might not make a difference, but in this case, we know that there was recent use of marijuana going in that car. So we didn't even have to worry about whether that is marijuana that was there from five days ago, ten days ago, other individuals. What we know is these individuals were engaged recently in the consumption of marijuana in that car. And that gives the officers probable cause. Is there a distinction to be made between an officer smelling marijuana in a car and a canine smelling it? Only in the sense that the canine has a much better sense of smell. And so- So alerts at a particular area. Well, the reality- I mean, that's the theory. That's the theory, but the reality as Trooper Treacle testified, because he was a canine officer- And had the canine in the car. He had the canine in the car, but the state police procedure is once the officer smells the odor of marijuana, that they don't bring the dog out, and part of that, I would presume, because of the testimony of Officer Treacle and what is found in the white case, which is cited in our brief, is all dogs smell is, they don't smell the actual drugs, they smell the odor. And that odor can come out in places of the car where it doesn't actually exist. Trooper Treacle said, for instance, depending on how the car is built, and how the seals are, and in what way the wind is blowing, that dog could alert in the front part of the car, even for marijuana that's in the trunk of the car. Because the odor is now wafting through the car, going through the vents, and coming out the front based on the wind. So my answer to your question is, does it make a difference if it's a drug dog? A drug dog is going to be more sensitive. It's going to notice marijuana at a lower threshold than the police officer. But it really is not going to give you any better sense of where in the car that marijuana is located. The, well, I will leave it at that. So. Well, I don't, I'm actually, I don't think I understand that. Because if they have a greater sense of smell, they are going to pick it up, even if the wind is wafting it towards the front of the car, they're going to, if it is located in the trunk, they're going to smell it in the trunk because they have this exaggerated sense of smell, certainly more than a police officer. Well, that was not what Trico testified to, and that's not what this court explained in the White case, because that odor is going to be moving. So if the marijuana is sitting here, and the dog is here, and the wind is blowing that way. It doesn't leave. I mean, you get it to move, it doesn't, just because an odor moves to another place doesn't mean it doesn't stay also in the place in which it originated. True, but it has to get to where the dog is. So if the dog is downwind of where it is, it's not going to smell it. It will smell it upwind, wherever it happens to be, and that's true. I can only go with what Trooper Trico said, he is the one that's the dog expert in terms of he has had his dog hit on the front of the car when in fact the marijuana is in the trunk of the car. But this is not a dog case. This is a case where the officers smelled it. It was very strong. Both of them said it was very strong. Trooper Tycho said it was so strong he didn't even put his head in the car. He got up to the car, the door was open, and it was so strong he could smell it there. Trooper Trico testified, and you can actually hear it in the video tape. There was a puppy in the car that he, as Trooper Trico said, had crapped in the car. And you can actually hear him, Trooper Trico, as he is searching the car, say to Trooper Tycho, I can still smell it over the crap in the car, and then he goes back to say the dog crap. I think the proper word in the fourth circuit is poop. That's what I was practicing with. I wasn't sure what to say. We like to go technical. At any rate, it was stronger than the odor of what the dog had left in the particular car. So it was a strong odor of marijuana, and I don't want to be repeating myself. But the bottom line is, here you have evidence of recent use by these people in this car, which gives now the officers probable cause to believe there's additional marijuana in the car. That can be found anywhere in the car, including the trunk. And for those reasons, we would ask that the court affirm the judgment of the district court. Thank you. Do I, do you have any rebuttal? Yes, ma'am. First, I'd like to say, upon information and belief, it is not very difficult to buy marijuana. But secondly, I'd like to distinguish- I thought you gave us your source. I'd like to distinguish United States versus Haley. The defendant was speeding, officers smelled marijuana from his body, and an intense smell from the passenger compartment of the car. The occupant admitted that marijuana was presently in the car, and then 200 pounds were found. In our case, this magical smell, excuse me, this strong odor of a ticketable amount of marijuana never turned up any marijuana whatsoever. And that fact illustrates what the fundamental problem with the government's proposed rule would be. Officers would just pull over people who, and then make up this smell of- See, the problem with that, though, is that the lady said she had smoked marijuana. And I'm inclined to think she probably did it pretty soon before they were stopped. But that admission does not show that there was currently marijuana in the car. No, but it does, it is a false safe to what you just said, which is the officers just make the whole thing up. Well, if police had information from a confidential informant that a- They don't need it because they have somebody on the scene who they know. They don't need a confidential informant. Well, I'm just making an analogy. If the police had information from a confidential informant that there was a ticketable amount of marijuana currently present in the passenger compartment of a car, the police would not be justified to look into the trunk of the car prior to searching the passenger compartment. So in this case, Ms. Wyatt's admission that she had smoked marijuana earlier, tied with the police observation of marijuana smoke in the passenger compartment, would not provide them more cause to search the trunk. Well, this all goes to a fact that you slide in and out of about whether, in fact, she said this before there was the search of the trunk or not. And we pressed you on that the first time around. You said, well, it's not clear, but no, my argument doesn't hang on that. It does not. So instead, you have to restate your facts. Somebody is stopped, valid traffic stop, in the car, acknowledges that they have smoked marijuana. Then there's the search of the trunk. After there's been the search of the car. Right. That's our position, Your Honor. That's all we have. Thank you for your time and consideration on our case. We will go down and greet the lawyers and then go directly to our next case. Good morning.
judges: Diana Gribbon Motz, Albert Diaz, Andre M. Davis